1  NOSSAMAN LLP
   Robert S. McWhorter (CA 226186)
2  *rmcwhorter@nossaman.com*
   Stephen N. Roberts (CA 62538)
3  *sroberts@nossaman.com*
   S. Ashar Ahmed (CA 256711)
4  *aahmed@nossaman.com*
   621 Capitol Mall, 25th Floor
5  Sacramento, CA 95814
   Telephone:  916.442.8888
6  Facsimile:  916.442.0382

7

8  Attorneys for Plaintiff
   JACK IN THE BOX INC.,
9  a Delaware corporation, formerly known as Foodmaker, Inc.

10

11                 UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| JACK IN THE BOX INC., a Delaware corporation, formerly known as Foodmaker, Inc., | Case No: |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **(1) BREACH OF CONTRACT**<br>**(2) CLAIM & DELIVERY/RECOVERY OF POSSESSION OF PERSONAL PROPERTY** |
| DEEPAK MEHTA, an individual; KIRAN MEHTA, an individual; MEHTA ENTERPRISES, INC., a suspended California corporation; DEEPAK ENTERPRISES INC., a California corporation, | **(3) VIOLATION OF THE LANHAM ACT – TRADEMARK INFRINGEMENT**<br>**(4) VIOLATION OF LANHAM ACT – UNFAIR COMPETITION, FALSE DESIGNATION OR ORIGIN, PASSING OFF, AND FALSE ADVERTISING** |
| Defendants. | **(5) VIOLATION OF LANHAM ACT – DILUTION OF FAMOUS MARKS**<br>**(6) VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ. -- UNFAIR BUSINESS PRACTICES**<br>**(7) INJUNCTIVE RELIEF**<br>**(8) APPOINTMENT OF RECEIVER** |

134722_6.DOC

Plaintiff, Jack in the Box Inc., formerly known as Foodmaker, Inc. ("JIB") states:

## INTRODUCTION

1.      This action arises out of the termination of written franchise agreements and lease agreements between JIB and Defendants, Deepak Mehta, Kiran Mehta, Mehta Enterprises, Inc. and Deepak Enterprises Inc. (collectively, the "Defendants").  After Defendants breached these agreements by, among other things, failing to remit required rent, royalties, and other fees, and failing to cure those defaults after having received written notice thereof and demand for such cure, JIB terminated the franchise agreements and lease agreements for cause.  Despite the termination of the franchise agreements and lease agreements, Defendants continue to (1) unlawfully use JIB's name and marks and (2) violate post-termination provisions of the written franchise agreements and lease agreements.  JIB seeks appointment of a receiver and/or entry of a preliminary and permanent injunction to enjoin Defendants' infringement of JIB's federally-registered names and marks and unfair competition in violation of federal trademark laws, and from continuing to violate those post-termination obligations under the franchise agreements and the lease agreements.

## PARTIES

2.      JIB is a corporation duly organized and existing under the laws of the State of Delaware, whose principal place of business, at all times mentioned, is located at 9330 Balboa Avenue, San Diego, California 92123.  JIB is, and at all times mentioned herein has been, authorized to conduct business in the State of California.

3.      Defendant, Mehta Enterprises, Inc. ("Mehta Enterprises") is a California corporation, whose principal place of business is located at 4443 Deer Ridge Road, Danville, Contra Costa County, California 94506.

4.      Defendant, Deepak Enterprises Inc. ("Deepak Enterprises") is a California corporation, whose principal place of business is located at 4443 Deer Ridge Road, Danville, Contra Costa County, California 94506.

- 1 -
COMPLAINT

5.      Defendant, Deepak Mehta is an adult individual, who upon information and belief, at all relevant times, has resided at 4443 Deer Ridge Road, Danville, Contra Costa County, California 94506.

6.      Defendant, Kiran Mehta is an adult individual, who upon information and belief, at all relevant times, has resided at 4443 Deer Ridge Road, Danville, Contra Costa County, California 94506.

7.      Deepak Mehta and Kiran Mehta (collectively, the "Mehtas") are husband and wife and, upon information and belief, are the sole officers, directors, and shareholders of Mehta Enterprises and Deepak Enterprises.

## **JURISDICTION**

8.      This Court has original subject matter jurisdiction over  JIB's federal claims pursuant to 28 U.S.C. §§ 1331, 1338, 1367 in that this is a civil action involving claims arising under the laws of the United States, including the Lanham Act, 15 U.S.C. §§ 1051 et seq., and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

10.      Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(1) because one or more of the Defendants are residents in this judicial district.

## **INTRADISTRICT ASSIGNMENT**

11.      Pursuant to Civil L. R. 3-2(c) and (d), all or a substantial portion of the events and omissions underlying this Civil Action arise in the Counties of Contra Costa, Alameda, Solano, and Napa. and should be assigned to the Oakland Division.

**FIRST CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**

**(Breach of Contract)**

12.     JIB incorporates herein by reference as though set forth in full, all allegations in paragraphs 1 through 11, inclusive, of this Complaint.

**A.     THE JACK IN THE BOX REGISTERED TRADE AND SERVICE MARKS**

13.     JIB is engaged in the highly-competitive quick-service restaurant business.

14.     With more than 2200 restaurants in 19 states, JIB operates, and grants franchises to qualified persons to operate, Jack in the Box® restaurants using JIB's unique business format, methods, system of operations, and JIB's proprietary, registered names and trademarks.

15.     At all relevant times, JIB owns the Jack in the Box® trademarks, copyrights, confidential information, and other related intellectual property.

16.     JIB developed, and JIB is the sole and exclusive owner of, a unique and uniform system (the "System") relating to the establishment and operation of Jack in the Box® restaurants and featuring, among other things, quick-service restaurant service for the sale of food and beverage products.

17.     To identify the source, origin, and sponsorship of its products and services, and to distinguish those products and services from those established, made, offered, and sold by others, JIB owns certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including but not limited to the name and mark Jack in the Box®, Jumbo Jack®, Sourdough Jack®, Breakfast Jack®, Clown Head Design®, and Jack Jr.® (the "Marks").  A true and correct copy of JIB's registered Marks is attached to this Complaint as **Exhibit 1** and is incorporate by reference.

18.     JIB owns the Marks.  It has the full right and authority to use and sublicense the use of the Marks to others, including authorized licensees.

19.     JIB registered the Marks on the Principal Register of the United States Patent Office.  The registrations of the Marks continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

20.     JIB gave notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111.  JIB has complied with all legal requirements to ensure JIB remains the exclusive user and licensor of the Marks.

21.     JIB continuously used, and continues to use, the Marks in interstate commerce in connection with (i) the promotion, sale, and franchising of Jack in the Box® restaurants, and (ii) the promotion and sale of the products and services JIB offers throughout the United States, including the State of California.

22.     JIB and certain affiliates have the exclusive right to use and license the Marks and derivations thereof, as well as the distinctive System with which franchisees offer Jack in the Box® products to the public under the Marks.  Pursuant to franchise agreements entered into by and between JIB and its authorized and approved franchisees, JIB grants franchises to qualified persons to own and operate Jack in the Box® restaurants using the Marks and the System, but only in such manner and at such locations as are expressly authorized by JIB.

23.     JIB and its authorized and approved franchisees use the Marks as the Marks and trade identity by which the products and services offered by JIB and its franchisees are distinguished from other quick-service restaurants and the products and services made and sold by them.

24.     At all relevant times, JIB extensively advertised and promoted Jack in the Box® restaurants and the products and services they offer under the Marks throughout the United States and through various media.  As a result of such efforts and the considerable money spent in connection therewith, the products offered by JIB and JIB's authorized and approved franchisees under the Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including the State of California.

**B.     THE PARTIES' WRITTEN FRANCHISE AGREEMENTS**

25.     JIB, as franchisor, and the Mehtas, as franchisees, entered into various written Jack in the Box® Restaurant Franchise Agreements (collectively, the "Franchise Agreements") on the following dates and concerning the following locations:

| | Site No. | Store Location | Date of Jack in the Box® Restaurant Franchise Agreement |
|---|---|---|---|
| a. | 0413 | 6510 Telegraph Avenue Oakland, CA  94609 | 9/15/2009 |
| b. | 0420 | 2424 E. International Blvd. Oakland, CA  94601 | 9/15/2009 |
| c. | 0433 | 4425 Telegraph Avenue Oakland, CA  94609 | 9/15/2009 |
| d. | 0436 | 2689 Pinole Valley Road Pinole, CA  94564 | 4/11/2005 |
| e. | 0451 | 1980 N. Texas Street Fairfield, CA  94533 | 9/15/2009 |
| f. | 0470 | 400 Broadway Street Vallejo, CA  94590 | 9/15/2009 |
| g. | 0520 | 1610 Lewis Brown Drive Vallejo, CA  94589 | 4/11/2005 |
| h. | 0533 | 532 Hegenberger Road Oakland, CA  94621 | 9/15/2009 |
| i. | 0542 | 14395 San Pablo Avenue San Pablo, CA  94806 | 3/24/2008 |
| j. | 0568 | 1965 Texas Street Fairfield, CA  94533 | 9/15/2009 |
| k. | 0578 | 2185 Main Street Oakley, CA  94561 | 9/22/1992 |
| l. | 3455 | 107 Red Top Road Fairfield, CA  94534 | 4/11/2005 |
| m. | 3471 | 3800 San Pablo Avenue, Bldg. A Hercules, CA  94547 | 4/11/2005 |
| n. | 3483 | 499 Grizzly Island Road Suisun City, CA  94585 | 9/15/2009 |
| o. | 3491 | 4801 Lone Tree Way Antioch, CA  94531 | 9/15/2009 |
| p. | 4334 | 107 W. American Canyon Road American Canyon, CA  94503 | 4/11/2005 |
| q. | 4340 | 2705 Hillcrest Avenue Antioch, CA  94531 | 9/15/2009 |
| r. | 4346 | 4490 Central Way Fairfield, CA  94534 | 9/15/2009 |
| s. | 4400 | 1051 Willow Pass Court Concord, CA  94520 | 5/19/2011 |

True and correct copies of the Franchise Agreements are attached to this Complaint as **Exhibits 2 through 20** and incorporated herein by reference.

26.     Under each of the Franchise Agreements, JIB granted the Mehtas the right to operate a Jack in the Box® restaurant and a license to use the System and the Marks in connection therewith.

27.     In executing each of the Franchise Agreements, the Mehtas expressly acknowledged (i) that their license to use the Marks applied only to their use of those Marks in connection with the operation of the restaurant at the specified location, (ii) that such Marks shall remain under the sole and exclusive ownership and control of JIB, (iii) that "all right, title, and interest to the System and the Marks are and shall remain vested solely in [JIB]," and (iv) that the Mehtas do not have "any right or interest in the System, the Marks, or in the goodwill derived therefrom."  See, e.g., Ex. 2, §§ 1, 10.

28.     Under each of the Franchise Agreements, the Mehtas acknowledged the "uniqueness, confidentiality, and value of the System and the advantages and benefits that may be obtained by using the System and the Marks."  See, e.g., Ex. 2, p. 1.

29.     Pursuant to each of the Franchise Agreements, JIB supplied confidential information in connection with the development and operation of JIB's franchised businesses, including, but not limited to, JIB's products, recipes, product preparation procedures, customer service measures and techniques, franchise support procedures, supplier relationship and distribution system information, new product development information, growth plans or strategies, real estate development plans or strategies, restaurant design plans, proposed restaurant sites, equipment, computer systems, business and development plans and strategies, training programs, consumer research results, marketing and advertising strategies and materials, and other information designated as "confidential" by JIB (collectively the "Confidential Information").  See, e.g., Ex. 2, §§ 9(B), 9(D).  The Mehtas acknowledged and agreed in the Franchise Agreements that all Confidential Information is, and will remain, JIB's sole and exclusive proprietary property.  See, e.g., Ex. 2, § 9(D).

30.     Further, the Mehtas acknowledged and agreed in the Franchise Agreements that JIB invested, and continues to invest, considerable sums of money in developing the System, and that they will protect JIB's Confidential Information.  See, e.g., Ex. 2, § 9(A).

31.     Under each of the Franchise Agreements, the Mehtas agreed to pay JIB a monthly royalty of five percent (5%) of their monthly gross sales, net of any tax (the "Royalty Fees"). See, e.g., Ex. 2, § 7(A)(1).

32.     The Mehtas agreed under each of the Franchise Agreements to pay JIB a monthly marketing fee (net of any tax or other fee imposed thereon) equal to the greater of five percent (5%) of gross charges or the percentage of gross sales then being paid by the owners of more than one-half of the Jack in the Box® restaurants then in operation in the United States (the "Marketing Fee"). See, e.g., Ex. 1, § 7(B).

33.     The Mehtas agreed under each of the Franchise Agreements that the Marketing Fee or the Royalty Fee, if not timely paid, would accrue interest at the then-current rate established by JIB under its credit policy for franchisees or the maximum rate permitted by law, whichever is less. See, e.g., Ex. 2, § 7(D).

34.     Under each of the Franchise Agreements, the Mehtas acknowledged and agreed that they would conform to and comply with all federal, state and local laws, ordinances and regulations now in force or that are hereafter enacted affecting the operation of their franchised restaurant businesses. See, e.g., Ex. 2, § 4(K).

35.     The Franchise Agreements each mandate that the Mehtas make all required payments of taxes levied or assessed in connection with the possession, ownership or operation of franchised restaurant businesses. See, e.g., Ex. 2, § 17(C)(7). The Franchise Agreements each prohibit the Mehtas from selling, assigning, pledging, mortgaging, hypothecating, encumbering, giving as security, or transferring their franchise or leasehold rights, without JIB's prior written consent. See, e.g., Ex. 2, § 13(A).

36.     Under each of the Franchise Agreements, the Mehtas agreed to comply with and perform all covenants contained in any other agreement, instrument or other document between JIB or its affiliates, including, any franchise agreements, lease agreements, and promissory notes. See, e.g., Ex. 2, § 16. Each of the Franchise Agreements provides that "default, in whole or in part, under any of the aforementioned agreements or notes, shall constitute a default." *Id*.

**C.      JIB'S RIGHT OF TERMINATION OF THE FRANCHISE AGREEMENTS**

37.     Under each of the Franchise Agreements, JIB may terminate the Franchise Agreements, and all rights granted to the Mehtas, "*immediately* upon notice" to the Mehtas, if any of the following events occur:

        a.      the Mehtas fail to pay any fees required under the Franchise Agreement for a period of ten (10) days (see, e.g., Ex. 2 § 17(B)(3));

        b.      the Mehtas fail to comply with the Franchise Agreement "on three (3) or more separate occasions within any twenty-four (24) month period (see, e.g., Ex. 2 § 17(B)(7));

        c.      the Mehtas fail to comply with the same requirement under the Franchise Agreement on two (2) or more separate occasions within any twelve (12) month period, whether or not such failure to comply is corrected after notice of default is given (see, e.g., Ex. 2 § 17(B)(7)); and/or

        d.      the Mehtas make any unauthorized use of the Marks or the System (see, e.g., Ex. 2 § 17(B)(9)).

38.     Each of the Franchise Agreements expressly provides that the Mehtas will be deemed to be in default and authorizes JIB to terminate the Franchise Agreements and all rights granted therein, if the Mehtas fail "to pay any federal or state income, sales or other taxes due on the Restaurant's operations," for a period of five (5) days unless the Mehtas are in good faith contesting liability for such taxes.  See e.g., Ex. 2 § 17(C)(7).

39.     Each of the Franchise Agreements expressly provides that the Mehtas will be deemed to be in default and authorizes JIB to terminate the Franchise Agreements and all rights granted therein, if the Mehtas fail "to make regular payments to" JIB for any money due and owing.  See, e.g., Ex. 2 § 17(C)(10).

40.     Each of the Franchise Agreements expressly provides that the Mehtas will be deemed to be in default and authorizes JIB to terminate the Franchise Agreements and all rights granted therein, if the Mehtas fail to comply with any other franchise agreement, development

agreement, lease agreement, promissory note, or any agreement or account for the purchase of products or services between JIB and the Mehtas.  See, e.g., Ex. 2 § 17(C)(13).

41.     Upon termination of each Franchise Agreement, the Mehtas' right to use the Marks and the System terminate.  See, e.g., Ex. 2 § 17(F).

42.     Upon termination of each Franchise Agreement, the Mehtas must take, or refrain from taking, certain actions including, but not limited to, the following:

   a.   immediately and permanently cease to identify themselves, in any manner whatsoever, as a Jack in the Box® franchise (see, e.g., Ex. 2 § 17(F));

   b.   immediately and permanently cease to use, in any manner whatsoever, any of the Marks, the System, or any mark or system similar thereto (see, e.g., Ex. 2 § 17(F));

   c.   immediately and permanently cease to use, in any manner whatsoever, any of JIB's trade secrets, operating procedures, promotional materials, restaurant operating instructions, or JIB's business process (see, e.g., Ex. 2 § 17(F));

   d.   immediately return to JIB all manuals and all other materials containing trade secrets, restaurant operating instructions, or business practices of JIB and immediately and permanently cease using the Confidential Information (see, e.g., Ex. 2 § 17(F)); and

   e.   immediately remove or change all signs and the building so as to distinguish the premises from its former appearance and from any other Jack in the Box® restaurant (see, e.g., Ex. 2 § 17(H)).

43.     The Mehtas impliedly agreed to act in good faith and fair dealing under each of the Franchise Agreements.

44.     Each of the Franchise Agreements provides that JIB is entitled to recover all reasonable attorneys' fees and costs from the Mehtas as a result of their default under the Franchise Agreements, or to obtain injunctive or other relief to enforce the Franchise Agreements after termination.  See, e.g., Ex. 2 §§  4(K), 9(G), 12, 19(K).

**D.    THE ASSIGNMENT OF THE MEHTAS' RIGHTS UNDER THE FRANCHISE AGREEMENTS**

45.    During the period of approximately March 22, 1993 to approximately September 15, 2009, the Mehtas, Mehta Enterprises, and JIB entered into certain agreements entitled "Assignment and Agreement (Franchise Agreement)" (collectively the "Mehta Enterprises Franchise Assignment Agreements") relating to Site Nos: 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, and 4346 (the "Mehta Sites."). True and correct copies of the Mehta Enterprises Franchise Assignment Agreements are attached to this Complaint as **Exhibits 21 through 24** and are incorporated by reference.

46.    Under the Mehta Enterprises Franchise Agreements, the Mehtas assigned all of their rights, title, interest and obligations under the Franchise Agreements to Mehta Enterprises relating to the Mehta Sites. See e.g., Exhibit 21, ¶ 1. However, notwithstanding the Mehta Enterprises Franchise Agreements, the Mehtas were not relieved of, but remained jointly and severally liable for the performance of all terms and conditions under each of the Franchise Agreements for the Mehta Sites. See e.g., Exhibit 21, ¶ 4.

47.    On May 19, 2011, the Mehtas, Deepak Enterprises, and JIB entered into certain agreements entitled "Assignment and Agreement (Franchise Agreement)" (the "Deepak Enterprises Franchise Assignment Agreement") relating to Site No: J4400. A true and correct copy of the Deepak Enterprises Franchise Assignment Agreement is attached to this Complaint as **Exhibit 25**.

48.    Under the Deepak Enterprises Franchise Agreement, the Mehtas assigned all of their right, title, interest and obligations under the Franchise Agreement to Deepak Enterprises Inc. relating to Site No. J4400. See e.g., Exhibit 25, ¶ 1. However, notwithstanding the Deepak Enterprises Franchise Agreement, the Mehtas were not relieved of, but remained jointly and severally liable for the performance of all terms and conditions under the Franchise Agreement relating to Site No: J4400. See e.g., Exhibit 25, ¶ 4.

E.    THE PARTIES' WRITTEN LEASE AGREEMENTS

49.    In connection with the Franchise Agreements, JIB, as landlord, and the Mehtas, as tenants, entered into various written lease agreements (collectively, the "Lease Agreements") on the following dates and concerning the following locations:

|   | Site No. | Site Location | Lease Agreement Date for Jack in the Box® Restaurant Franchise |
|---|---|---|---|
| a. | 0413 | 6510 Telegraph Avenue<br>Oakland, CA  94609 | 9/15/2009 |
| b. | 0420 | 2424 E. International Blvd.<br>Oakland, CA  94601 | 9/15/2009 |
| c. | 0433 | 4425 Telegraph Avenue<br>Oakland, CA  94609 | 9/15/2009 |
| d. | 0436 | 2689 Pinole Valley Road<br>Pinole, CA  94564 | 4/11/2005 |
| e. | 0451 | 1980 N. Texas Street<br>Fairfield, CA  94533 | 9/15/2009 |
| f. | 0470 | 400 Broadway Street<br>Vallejo, CA  94590 | 9/15/2009 |
| g. | 0520 | 1610 Lewis Brown Drive<br>Vallejo, CA  94589 | 4/11/2005 |
| h. | 0533 | 532 Hegenberger Road<br>Oakland, CA  94621 | 9/15/2009 |
| i. | 0542 | 14395 San Pablo Avenue<br>San Pablo, CA  94806 | 3/24/2008 |
| j. | 0568 | 1965 Texas Street<br>Fairfield, CA  94533 | 9/15/2009 |
| k. | 0578 | 2185 Main Street<br>Oakley, CA  94561 | 9/22/1992 |
| l. | 3455 | 107 Red Top Road<br>Fairfield, CA  94534 | 4/11/2005 |
| m. | 3471 | 3800 San Pablo Avenue, Bldg. A<br>Hercules, CA  94547 | 4/11/2005 |
| n. | 3483 | 499 Grizzly Island Road<br>Suisun City, CA  94585 | 9/15/2009 |
| o. | 3491 | 4801 Lone Tree Way<br>Antioch, CA  94531 | 9/15/2009 |
| p. | 4334 | 107 W. American Canyon Road<br>American Canyon, CA  94503 | 4/11/2005 |
| q. | 4340 | 2705 Hillcrest Avenue<br>Antioch, CA  94531 | 9/15/2009 |

| | Site No. | Site Location | Lease Agreement Date for Jack in the Box® Restaurant Franchise |
|---|---|---|---|
| r. | 4346 | 4490 Central Way Fairfield, CA  94534 | 9/15/2009 |

True and correct copies of the Lease Agreements are attached to this Complaint as **Exhibit 26 through 43** and incorporated herein by reference.

50.     Under each of the Lease Agreements, the Mehtas, as tenants, agreed to pay a "Fixed Minimum Rent," a "Percentage Rent," and an "Additional Rent" (collectively, the "Rent") to JIB.  See e.g., Ex. 26, § 3.  In addition, the Mehtas, as tenants, agreed to pay all taxes and assessments levied upon, or assessed upon, each site location.  See e.g., Ex. 26, § 6.

51.     Under each of the Lease Agreements, JIB agreed to lease each location site solely for the operation of a franchised restaurant "in strict compliance with the standards set forth by [JIB] which constitute its JACK IN THE BOX System."  See e.g., Ex. 26, § 4 (emphasis original).

52.     Each of the Lease Agreements prohibit the Mehtas from encumbering or causing any claim or lien to be placed on any leased site location.  See e.g., Ex. 26, § 21.

53.     Under each of the Lease Agreements, the Mehtas agreed to "comply with and perform all covenants contained in the Franchise Agreement [for the corresponding site location] and any other franchise agreements, leases, or other agreements between [JIB] (or [JIB's] affiliates) and [the Mehtas], whether or not pertaining to the [leased site location]."  See e.g., Ex. 26, § 22.

54.     Under each of the Lease Agreements, the Mehtas agreed that termination, default, or revocation of any of the Franchise Agreements for any reason, shall terminate the Lease Agreements without further notice by JIB to the Mehtas.  *Id*.

55.     Each of the Lease Agreements provides that, upon default, JIB may terminate the Lease Agreement and recover possession of the leased site location.  See e.g., Ex. 26, § 23(B).

56.     Each of the Lease Agreements provides that if JIB prevails in legal proceedings based on the Mehtas breach any of the Lease Agreements, the Mehtas must pay JIB's reasonable attorneys' fees and costs incurred in such proceeding.  See e.g., Ex. 26, § 4.

**F.     THE ASSIGNMENT OF THE MEHTAS' RIGHTS UNDER THE LEASE AGREEMENTS**

57.     The Mehtas entered into certain agreements entitled "Assignment and Agreement" (collectively the "Lease Assignment Agreements"), assigning their rights, title, interest and obligations under the Lease Agreements to Mehta Enterprises, Inc. However, notwithstanding the Lease Assignment Agreements, the Mehtas were not relieved of, but remained jointly and severally liable for the performance of all terms and conditions under each of the Lease Agreements.  True and correct copies of the Lease Assignment Agreements are attached to this Complaint as **Exhibits 44 through 61** and incorporated herein by reference.

**G.     DEFENDANTS' BREACH OF THE FRANCHISE AGREEMENTS AND THE LEASE AGREEMENTS**

58.     Beginning on or about February 1, 2013 and continuing thereafter, Defendants breached each of the Franchise Agreements and each of the Lease Agreements by, among other things:

        a.     failing to timely comply with and perform all of the covenants contained in the Lease Agreements through the non-payment of Rent and related charges for Site Nos : 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340 and 4346, totaling $956,304.48, including interest, as of September 17, 2013;

        b.     failing to timely pay the Royalty Fees and Marketing Fees for a period of more than ten (10) days for Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, and 4346;

        c.     failing to timely pay various miscellaneous and ancillary fees relating to the operation for Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4334, 4340, and 4346, totaling $63,280.20, including interest, as of September 17, 2013;

        d.     failing to comply with all laws through the nonpayment of sales tax to the California Board of Equalization;

e.    failing to make all required payment of taxes for a period of five (5) days levied in connection with the possession, ownership, and operation of franchised restaurants, thereby resulting in the California Board of Equalization's filing of two tax liens in the total amount of $648,400.10;

f.    upon information and belief, pledging, mortgaging, hypothecating, or encumbering, one or more of the leased site locations and/or transferring Defendants' franchise or leasehold rights to MGI Group, LLC, without JIB's prior written consent;

g.    failing to timely pay as required under a certain promissory note in favor of JIB, dated November 26, 2012 in the principal amount of $576,173;

h.    failing on two (2) or more separate occasions within any twelve (12) month period to comply with the same requirement under the Franchise Agreements;

i.    failing to comply with the Franchise Agreements on three (3) or more separate occasions as specified herein within any twenty-four (24) month period;

j.    failing to act fairly and in good faith; and

k.    taking or failing to take other actions as may be discovered in this case.

59.    JIB at all times fully performed all of its obligations and promises under the Franchise Agreements and the Lease Agreements, or such performance was excused as a result of Defendants' breach of these agreements.

60.    JIB repeatedly demanded that Defendants perform under the Franchise Agreements and the Lease Agreements.

61.    On May 3, 2013, JIB delivered two written Notices of Default to Defendants providing Defendants a reasonable opportunity to cure their default within 32 days of the Notice of Default by, among other things, paying all past due rents, related fees, Royalty Fees, Marketing Fees, and certain miscellaneous and ancillary fees, providing JIB with formal documentation of an agreed-upon payment schedule to repay all outstanding sales tax to the California State Board of Equalization, removing any pledge, mortgage, hypothecation, encumbrance, securitization, or transfer of Defendants' franchise or leasehold rights to MGI

Group, LLC.  A true and correct copy of the two Notices of Default are attached to this Complaint as **Exhibits 62 and 63** and are incorporated by reference.

62.     The Notices of Default informed Defendants that if they did not cure all of the specified defaults, the Franchise Agreements would terminate effective at 12:01 a.m., on June 5, 2013, without further notice.  See Exhibits 62 and 63.  The Notices of Default demanded that Defendants comply with all post-termination obligations under the Franchise Agreements.  *Id.*

63.     On June 4, 2013, June 14, 2013, June 21, 2013, June 25, 2013, June 28, 2013, July 12, 2013, July 19, 2013, August 2, 2013, August 16, 2013, and September 5, 2013, JIB extended the time within which Defendants would be entitled to cure the defaults.

64.     Despite the Notices of Default, Defendants failed and refused to perform under the Franchise Agreements and the Lease Agreements.

65.     JIB terminated each of the Franchise Agreements effective 12:01 a.m., September 17, 2013, pursuant to the terms of the Franchise Agreements and in accordance with Business and Professions Code section 20020.

66.     Good cause existed to terminate each of the Franchise Agreements as defined under Business and Professions Code section 20020 because Defendants failed to comply with lawful requirements under the Franchise Agreements after being given notice thereof and a reasonable opportunity to cure that failure.

67.     JIB terminated each of the Lease Agreements effective 12:01 a.m., September 17, 2013, pursuant to the terms of the Lease Agreements.

68.     Despite the Notices of Default, Defendants failed to perform their post-termination obligations under the Franchise Agreements and the Lease Agreements by, among other things, continuing to identify themselves as Jack in the Box® franchises and by using the Marks, the System, and the Confidential Information as well as JIB's trade secrets, operating procedures, promotional materials, restaurant operating instructions, and JIB's business process, failing to pay the Royalty Fees and all other amounts owed to JIB, failing to return to JIB all manuals and all other materials containing trade secrets, restaurant operating instructions, or business practices of JIB, failing to remove or change all signs and the building so as to

1    distinguish the premises from its former appearance and from any other Jack in the Box®

2    restaurant.

3          69.     On September 19, 2013, JIB served Defendants with written demands that they

4    cease and desist from operating Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542,

5    0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346, and 4400.  True and correct copies of

6    these written demands are attached to this Complaint as **Exhibit 64** and are incorporated by

7    reference.

8          70.     Despite JIB's written demands, , Defendants continue to operate, and remain in

9    possession of, Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578,

10   3455, 3471, 3483, 3491, 4334, 4340, 4346, and 4400 after termination of each of the Franchise

11   Agreements and the Lease Agreements.

12         71.     As a direct and proximate cause of Defendants' breach of the Franchise

13   Agreements and the Lease Agreements, JIB suffered actual damages, and continues to suffer

14   damages, totaling approximately $2,279,274.42, as of September 17, 2013, plus interest, costs,

15   and attorneys' fees, or such other amounts as may be proven at trial.  JIB suffered other actual

16   damages, and continues to suffer other actual damages in an amount to be proven at trial, plus

17   costs, interest, attorneys' fees, and other charges as provided under the Franchise Agreements.

18   These damages include, but are not limited to, Defendants' continued improper and unlawful use

19   of the Marks, the System, the Confidential Information, and JIB's Jack in the Box® trade name.

20         72.     This Court should impose a constructive trust on all funds, income, money, or

21   property of any kind or nature received from the operation of, and wrongful possession of, Site

22   Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483,

23   3491, 4334, 4340, 4346 and 4400 after termination of the Franchise Agreements and the Lease

24   Agreements.  Pursuant to these agreements, JIB has a right to these funds, income, money, or

25   property.  Also, Defendants' wrongful acquisition or detention of these funds, income, money, or

26   property would unjustly enrich Defendants.  The balance of equities weighs in favor of

27   imposition of a constructive trust.

28

**SECOND CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**

**(Claim & Delivery/Recovery of Possession of Personal Property)**

73.     JIB incorporates herein by reference as though set forth in full, all allegations in paragraphs 1 through 72, inclusive, of this Complaint.

74.     In each of the Franchise Agreements, Defendants granted JIB a security interest in the following collateral (the "Collateral") to secure prompt and complete payment of all obligations under the Franchise Agreements, including, but not limited to, payment of the Royalty Fees, the Marketing Fees, and all obligations owed by Defendants to JIB:

        a.    all equipment, furnishings, fixtures, merchandise, inventory, goods and other tangible personal property;

        b.    all accounts, accounts receivable, other receivables, contract rights, leases, software, chattel paper, and general intangibles;

        c.    all instruments, documents of title, policies and certificates of insurance, securities, bank deposits, bank accounts, and cash;

        d.    all books, records, and documents relating to any Collateral; and

        e.    all permits and licenses for the operation and ownership of the franchised business and all rights incident or appurtenant to such licenses, authorizations and permits; and all accession, additions, and improvements to, and all replacements, substitutions, and parts for, and all proceeds and products of the Collateral, including proceeds of insurance.

See Ex. 1, § 7.F.

75.     JIB filed multiple financing statements with the California Secretary of State covering the Collateral.

76.     Defendants defaulted under each of the Franchise Agreements by failing to pay the Royalty Fees and the Marketing Fees, by failing to comply with the Lease Agreements, and by failing to take, or taking, such other actions as described in this Complaint.

77.     At all relevant times, JIB performed all conditions, covenants, and promises required on its part under the Franchise Agreements, or, such performance was excused as a result of Defendants' breach of the Franchise Agreements.

78.     As a direct and proximate cause of Defendants' breach of the Franchise Agreements, the Lease Agreements, and ancillary agreements, JIB suffered actual damages, and continues to suffer damages, totaling approximately $2,279,274.42, as of September 17, 2013, plus interest, costs, and attorneys' fees or such other amounts as may be proven at trial.  JIB suffered other actual damages, and continues to suffer other actual damages in an amount to be proven at trial, plus costs, interest, attorneys' fees, and other charges as provided under the Franchise Agreements.  These damages include, but are not limited to, Defendants' continued improper and unlawful use of the Marks, the System, the Confidential Information, and JIBs' Jack in the Box® trade name.

79.     Defendants have remained to the present time in possession of the Collateral, subject to JIB's security interest.  As a result of Defendants' default, JIB is entitled to take immediate and exclusive possession of the Collateral pursuant to Commercial Code section 9609(1)(a), subject to any liens, security interests, or encumbrances of superior priority to JIB.

80.     JIB is informed and believes, and on this basis alleges, that the Collateral is located at Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400.

81.     The Collateral may be in a private place within these stores which may have to be entered to take possession.

82.     JIB is informed and believes, and on this basis alleges, that the Collateral has not been taken for a tax, assessment, or fine pursuant to statute, or seized under an execution against the Collateral, or if so seized, that it is exempt by statute from such seizure.

83.     The Collateral has been wrongfully detained and possessed by Defendants, despite Defendants' default under each of the Franchise Agreements and JIB's right to possession.

84.     JIB justifiably believes that Defendants will transfer, damage, destroy, conceal, dispose of, or use the Collateral so as to substantially impair its value.  Accordingly, this Court should grant JIB immediate possession.

### THIRD CAUSE OF ACTION
### AGAINST ALL DEFENDANTS

**(Violation of the Lanham Act, 15 U.S.C. § 1051 et seq.  – Trademark Infringement)**

85.     JIB incorporates herein by reference as though set forth in full, all allegations in paragraphs 1 through 84, inclusive, of this Complaint.

86.     Defendants failed to perform their post-termination obligations under the Franchise Agreement, including their obligations (i) to cease using the System and the Marks, (ii) to surrender to JIB all materials bearing any of the Marks, and (iii) to discontinue all use of JIB's Confidential Information and other proprietary information.

87.     Defendants intentionally failed to comply with the Notices of Default and continue to operate what is now a competitive business using JIB's federally registered trademarks, trade name, trade dress, trade secrets, and licensed methods and business practices.

88.     Defendants' violation of the Franchise Agreements, continued operation following termination, use of JIB's federally registered trademarks, trade name, trade dress, trade secrets, and licensed methods and business practices and all other alleged acts of Defendants as described in this Complaint, were, and continue to be, knowing and willful and committed with the intent to deceive or cause mistake or confusion.

89.     Defendants' continued use of JIB's federally registered trademarks, after termination of the Franchise Agreements, constitutes knowing and intentional use of a counterfeit mark or designation in connection with the sale, offering for sale, or distribution of goods, entitling JIB to recover a judgment against Defendants for three times of any actual profits or damages caused thereby, whichever is greater, together with reasonable attorneys' fees and prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117(b).

90.     Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Marks.  Defendants'

sale, offering for sale, distribution, or advertising of goods and services under the Marks, or any designs similar thereto, are likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1).

91.     As a direct and proximate result of Defendants' infringement, JIB has been, and will continue to be, substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

92.     JIB has no adequate remedy at law because the Marks are unique and represent to the public the identity, reputation, and goodwill of JIB such that damages alone cannot fully compensate JIB for Defendants' misconduct.

93.     Unless enjoined by this Court, Defendants and those acting in concert with them will continue to use and infringe the Marks, to the irreparable injury of JIB.  This threat of future injury to the business identity, goodwill, and reputation of JIB requires injunctive relief to prevent Defendants' continued use of the Marks, and to ameliorate and mitigate injuries of JIB.

## FOURTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

### (Violation of Lanham Act, 15 U.S.C. § 1125(a) – Unfair Competition, False Designation or Origin, Passing Off, and False Advertising)

94.     JIB incorporates herein by reference as though set forth in full, all allegations in paragraphs 1 through 93, inclusive, of this Complaint.

95.     The Marks, as used by JIB and its licensees in connection with providing goods and services relating to the Jack in the Box® restaurants using JIB's unique business format, methods, and system of operations, are distinctive marks and have become associated with JIB and thus exclusively identify JIB's business, products, and services.

96.     Defendants' violation of the Franchise Agreements, continued operation following termination, use of JIB's federally registered trademarks, trade name, trade dress, trade secrets, and licensed methods and business practices and all other alleged acts of Defendants as described in this Complaint, were, and continue to be, knowing and willful and committed with the intent to deceive or cause mistake or confusion.

97.     Defendants' continued operation of a competitive business at Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400, in direct violation of each of the Franchise Agreements and of JIB's termination of the Franchise Agreements, constitutes unfair competition, false designation of origin, and false or misleading descriptions or representations of fact.

98.     Defendants' acts, practices, and conduct are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

99.     Because of Defendants' wrongful use of the Marks and their appropriation of the Jack in the Box® unique business format, methods, and system of operations, consumers are deceptively led to believe that Defendants originate with or is sponsored or otherwise approved by JIB, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or alternatively, will cause patrons to believe that the Marks are generic, thus destroying the goodwill and value JIB has built with the Marks.

100.     Defendants' wrongful use of the Marks and their appropriation of the Jack in the Box® unique business format, methods, and system of operations, constitute false designation of origin, passing off, and false advertising in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

101.     As a direct and proximate result of Defendants' acts, as set forth above, JIB has been, and will continue to be, substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.  The injury to JIB is and continues to be ongoing and irreparable.  An award of damages alone cannot fully compensate JIB for its injuries.  JIB has no adequate remedy at law because the Marks are unique and represent to the public JIB's identity, reputation, and goodwill.

102.     Unless enjoined by this Court, Defendants and those acting in concert with them will continue to compete unfairly with JIBs to the irreparable injury of JIB.  This threat of future

injury to the business identity, goodwill, and reputation of JIB requires injunctive relief to prevent Defendants' continued unfair competition, and to ameliorate and mitigate JIB's injuries.

103.    JIB is entitled to a permanent injunction against Defendants, and those acting in concert with them, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, costs, and attorneys' fees.

**FIFTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS**

**(Violation of Lanham Act, 11 U.S.C. § 1125(c) – Dilution of Famous Marks)**

104.    JIB incorporates herein by reference as though set forth in full, all allegations in paragraphs 1 through 103, inclusive, of this Complaint.

105.    The Marks are famous trademarks within the meaning of section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

106.    Since termination of the Franchise Agreements, JIB has no control over the quality of Defendants' restaurant, advertising, products, services, marketing, or promotions, its use of the Marks, the System, and its misappropriation of the unique Jack in the Box® business format, methods, and system of operations.  As a result, the distinctive qualities of the Marks are being, and will continue to be, diluted.

107.    Defendants' violation of the Franchise Agreements, continued operation following termination of the Franchise Agreement, use of the Marks, the System, licensed methods and business practices, including, the unique Jack in the Box® business format, methods, and system of operations, and all other alleged acts of Defendants as described in this Complaint, are and will continue to result in the dilution of the distinctive nature of the Marks through blurring in violation of 15 U.S.C. § 1125(c).

108.    Defendants' wrongful conduct constitutes an extreme threat to the distinctiveness of the Marks, and the System that JIB has expended great efforts to develop and maintain through its strict control over the decision to license usage of the Marks.

109.    The distinctive nature of the Marks is of enormous value, and JIB is suffering and will continue to suffer irreparable harm and blurring of the Marks and the System if Defendants' wrongful conduct is allowed to continue.

110.    Unless enjoined by this Court, Defendants and those acting in concert with them will continue to dilute the distinctive nature of the Marks and the System.

111.     JIB is entitled to a permanent injunction against Defendants, and those acting in concert with them, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, costs, and attorneys' fees.

### SIXTH CAUSE OF ACTION
### <u>AGAINST ALL DEFENDANTS</u>

**(Violation of California Bus. & Prof. Code §§ 17200 et seq. – Unfair Business Practices)**

112.    JIB incorporates herein by reference as though set forth in full, all allegations in paragraphs 1 through 111, inclusive, of this Complaint.

113.    Defendants engaged in conduct that constitutes unlawful and unfair business practices in violation of California Business and Professions Code sections 17200 et seq. by, among other things, using, and continuing to use, the Marks, the System, the Confidential Information, JIB's trade secrets, and other licensed proprietary information, even after JIB terminated each of the Franchise Agreements.

114.    Further, Defendants engaged in conduct that constitutes unlawful, unfair and fraudulent business practices and unfair, deceptive, untrue or misleading advertising in violation of California Business and Professions Code sections 17200 et seq. by, among other things, giving, and continuing to give, the appearance to the public that they are an authorized Jack in the Box® franchise, even though Defendants' license to operate such a franchise was terminated. Defendants' ongoing unlicensed acts and business practices and conduct are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities.  As described above, Defendants' actions

violate the Lanham Act, 15 U.S.C. §§ 1051, et seq., including, but not limited to, 15 U.S.C. § 1125.

115.   Defendants took these actions with the intent to injure JIB and to gain an unfair advantage in the marketplace.

116.   As a direct and proximate result of Defendants' unfair conduct, JIB has suffered, and continues to suffer, substantial actual losses for which it is entitled to restitution from Defendants, in an amount to be proven at trial, including attorneys' fees and costs.  The exact amount of the restitution and other available relief is not presently ascertainable.

117.   JIB has no adequate remedy at law because the Marks, the System, the Confidential Information, JIB's trade secrets, and other licensed proprietary information are unique and represent to the public the identity, reputation, and goodwill of JIB such that restitution alone cannot fully compensate JIB for Defendants' misconduct.  Unless enjoined by this Court, Defendants and those acting in concert with them will continue to use and infringe the Marks, the System, the Confidential Information, JIB's trade secrets, and other licensed proprietary information, to the irreparable injury of JIB.  This threat of future injury to the business identity, goodwill, and reputation of JIB requires injunctive relief to prevent Defendants' continued use of the Marks, the System, the Confidential Information, JIB's trade secrets, and other licensed proprietary information, and to ameliorate and mitigate injuries of JIB.

### SEVENTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS

#### (Injunctive Relief)

118.   JIB incorporates herein by reference as though set forth in full, all allegations in paragraphs 1 through 117, inclusive, of this Complaint.

119.   JIB is the owner of the Marks, the System, the Confidential Information, the Jack in the Box® trade name, and the trade marks, trade names and/or service marks listed on Exhibit B to each of the Franchise Agreements.  JIB has built up valuable goodwill in the Marks, the System, the Confidential Information, the Jack in the Box® trade name, and the trade marks, trade names and/or service marks listed on Exhibit B to each of the Franchise Agreements, and

they have come to be associated exclusively with JIB's business by the public generally throughout the United States, including the State of California.

120.    With good cause, JIB lawfully and properly terminated Defendants' right to operate any of the franchised businesses.

121.    Defendants have continued, and continue, to operate Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400 and to use confidential methods, procedures and techniques associated with JIB's distinctive System, the Confidential Information and the proprietary Marks, including, but not limited to, JIB's trade marks, trade names and/or service marks.

122.    JIB will suffer immediate and irreparable harm or injury unless the Defendants and their respective, agents, representatives, assigns, attorneys, affiliates, officers, agents, servants and employees, those people in active concert or participation with them, and all entities controlled by them, including, Mehta Enterprises and Deepak Enterprises, are restrained from engaging in, or performing directly or indirectly, any of the following acts:

(a)    continuing to operate Jack in the Box® restaurants, including, but not limited to Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400;

(b)    representing themselves as Jack in the Box® restaurants without a license or authorization;

(c)    using the Marks, any trademark, service mark, logo, or trade name that is confusingly similar to the Jack in the Box® trademarks, using any variation of the phrase Jack in the Box® or a misspelling of the phrase Jack in the Box® in connection with the promotion, marketing, advertising, public relations and/or operation of a restaurant, or any such establishment using Jack in the Box® marketing strategy;

(d)    using the System, the Confidential Information, the Jack in the Box® unique business format, methods, and system of operations, in connection with the promotion, marketing, advertising, public relations and/or

operation of a restaurant, or any such establishment using Jack in the Box® marketing strategy;

(e)    infringing the Marks or using any similar designation, alone or in combination with any other components;

(f)    diluting, blurring, passing off, or falsely designating the origin of the Marks, the System, the Jack in the Box® unique business format, methods, and system of operations,

(g)    passing off any products or services as those of JIB or its authorized franchisees;

(h)    causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with JIB's franchisees, or with any of their products or services;

(i)    using any of the Marks for goods or services, or on the internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with JIB.

(j)    doing any other act or thing likely to induce the belief that Defendants' businesses, services, or products are in any way connected with, sponsored, affiliated, licensed, or endorsed by JIB; and

(k)    unfairly competing with JIB's franchisees, in any manner.

123.    Unless restrained, Defendants have, and will continue (i) to operate Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400; (ii) to represent themselves as Jack in the Box® restaurants without a license or authorization; (iii) to use JIB's trademarks, trade names, and/or service marks; and (iv) to use confidential methods, procedures and techniques associated with JIB's distinctive system, including, but not limited to, the Confidential Information, the System, and the Marks, in violation of each of the Franchise Agreements.  If this occurs, JIB will be immediately and irreparably harmed.  Defendants' continuing infringement on JIB's trademarks, trade names,

134722_6.DOC

and/or service marks results in loss of control over JIB's reputation, and loss of goodwill.  On this basis, as a matter of law, this Court can presume irreparable injury.  See *Jay Bharat Developers, Inc. v. Minidis*, 167 Cal.App.4th 437, 445 (2008).  Moreover, given JIB's lack of control, consumers will likely be confused as to the actual origin of the goods and services being provided by Defendants and the identity of the actual provider of those goods and/or services.  This will likely damage JIB's reputation in the marketplace.

124.    Courts have concluded that injunctive relief is appropriate where a terminated franchisee continues to use a franchisor's trademark, trade names, and/or service marks.  *Jay Bharat Developers, Inc. v. Minidis*, 167 Cal.App.4th 437, 445 (2008); *S & R Corp. v. Jiffy Lube Intern., Inc*., 968 F.2d 371, 376–377 (3rd Cir. 1992); *McDonald's Corp. v. Robertson* 147 F.3d 1301, 1308–1310 (11th Cir. 1998); see also Business and Professions Code section 14402.

125.    Under each of the Franchise Agreements, Defendants acknowledged that the Confidential Information, the Marks, and the System are and remain, JIB's sole and exclusive proprietary property.  Further, Defendants acknowledged that JIB has invested and continues to invest, considerable sums of money to develop the Confidential Information, and the Marks, including, but not limited to, JIB's trademark, trade names, and/or service marks.

126.    Under each of the Franchise Agreements, Defendants acknowledged any failure to maintain and protect the secret and confidential nature of the Confidential Information will result in substantial injury and damage to JIB for which there is no adequate remedy at law.

127.    Because of the indebtedness owed to JIB, JIB will be irreparably harmed unless all funds derived from Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400, are placed in escrow pending final judgment.

128.    The harm to JIB in the absence of an injunction outweighs the harm to Defendants that would result from the injunction.  Entry of an injunction would maintain the status quo for the benefit of all parties pending final judgment.  In contrast, if this Court does not enter an injunction, JIB will continue to wrongfully use the Confidential Information, the Marks, and the System.

129.    JIB has demonstrated a reasonable likelihood that it will succeed on the merits of its claims against Defendants.

130.    JIB does not have a plain, speedy or adequate remedy at law.

131.    Issuance of an injunction would serve the public interest.

### EIGHTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS

**(Appointment of Receiver)**

132.    JIB incorporates herein by reference as though set forth in full, all allegations in paragraphs 1 through 131, inclusive, of this Complaint.

133.    This Court should appoint a receiver (i) to manage, operate, and maintain the restaurants located at Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400, and (ii) to take control and possession of the Marks, the System, the Confidential Information, the Collateral and all proceeds therefrom, JIB's trade secrets, confidential methods, procedures and techniques associated with JIB's distinctive system, and any other personal property associated with the foregoing sites.

134.    Appointment of a receiver is necessary to preserve, safeguard and protect JIB's property or rights, including, but not limited to, (a) JIB's security interest in the Collateral and the proceeds therefrom, (b) JIB's business identity, goodwill, and reputation, and (c) JIB's interest in the Marks, the System, the Confidential Information, JIB's trade secrets, confidential methods, and procedures and techniques associated with JIB's distinctive system related to Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400.

135.    If a receiver is not appointed, JIB will be immediately and irreparably harmed because Defendants have, and will continue, (i) to operate Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400; (ii) to represent themselves as Jack in the Box® restaurants without a license or authorization; (iii) to use JIB's trademarks, trade names, and/or service marks; and (iv) to use confidential methods, procedures and techniques associated with JIB's distinctive System, including, but not

limited to, the Confidential Information, the System, and the Marks, in violation of each of the Franchise Agreements.

**WHEREFORE**, JIB prays for judgment as follows:

A.   For the First Cause of Action against Defendants:

      (1)   For compensatory damages against Defendants, jointly and severally, totaling approximately $2,279,274.42, as of September 17, 2013, or such other amount to be proven at trial,

      (2)   For other compensatory damages as proven at trial;

      (3)   For prejudgment and post-judgment interest at the maximum legal rate of interest, allowed by law;

      (4)   For reasonable attorneys' fees and costs incurred as allowed by law;

      (5)   For an order requiring Defendants to fully and completely comply with their obligations after termination of the Franchise Agreements and the Lease Agreements, including, but not limited to, returning possession of all the Marks, the Confidential Information, and the Collateral to JIB;

      (6)   For imposition of a constructive trust on all funds, income, money, or property of any kind or nature received from operation of Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400;

      (7)   For costs incurred in this action; and

      (8)   For such other and further relief as this Court may deem proper.

B.   For the Second Cause of Action Against Defendants:

      (1)   For a writ of possession of the Collateral and all proceeds thereof;

      (2)   For immediate and permanent possession of the Collateral and all proceeds thereof;

      (3)   For costs and attorneys' fees incurred in this matter as authorized by law; and

      (4)   For such other relief as this Court deems just and equitable.

C.    For the Third, Fourth and Fifth Causes of Action Against Defendants:

  (1) For an order pursuant to 15 U.S.C. § 1118 and the Franchise Agreements that Defendants remove from each restaurant (both interior and exterior) all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements, and deliver to JIB all of the same that are in the possession of Defendants, their affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with them, as well as all items bearing the Marks, and all plates, molds, and other means of making the same, all at Defendants' cost;

  (2) For an order that Defendants account and pay over to JIB all gains, profits, and advantages derived by them as a result of their infringement of the Marks, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

  (3) For entry of a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and each of their respective officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them, and all entities controlled by them, including, Mehta Enterprises and Deepak Enterprises, from:

    (a) continuing to operate Jack in the Box® restaurants, including, but not limited to Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400;

    (b) representing themselves as Jack in the Box® restaurants without a license or authorization;

    (c) using the Marks, any trademark, service mark, logo, or trade name that is confusingly similar to the Jack in the Box® trademarks, using any variation of the phrase Jack in the Box® or a misspelling of the phrase Jack in the Box® in connection with the promotion,

1  marketing, advertising, public relations and/or operation of a
2  restaurant, or any such establishment using Jack in the Box®
3  marketing strategy;

4  (d)  using the System, the Confidential Information, the Jack in the
5  Box® unique business format, methods, and system of operations,
6  in connection with the promotion, marketing, advertising, public
7  relations and/or operation of a restaurant, or any such establishment
8  using Jack in the Box® marketing strategy;

9  (e)  infringing the Marks or using any similar designation, alone or in
10  combination with any other components;

11  (f)  diluting, blurring, passing off, or falsely designating the origin of
12  the Marks, the System, the Jack in the Box® unique business
13  format, methods, and system of operations;

14  (g)  passing off any products or services as those of JIB or its
15  authorized franchisees;

16  (h)  causing a likelihood of confusion or misunderstanding as to their
17  affiliation, connection or association with JIB's franchisees, or with
18  any of their products or services;

19  (i)  using any of the Marks for goods or services, or on the Internet, or
20  as domain names, email addresses, meta tags, invisible data, or
21  otherwise engaging in acts or conduct that would cause confusion
22  as to the source, sponsorship or affiliation of Defendants with JIB;

23  (j)  doing any other act or thing likely to induce the belief that
24  Defendants' businesses, services, or products are in any way
25  connected with, sponsored, affiliated, licensed, or endorsed by JIB;
26  and

27  (k)  unfairly competing with JIB's franchisees, in any manner.

28

(4)  For an order directing Defendants to file with this Court and serve upon JIB within 30 days after service of any injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction in accordance with 15 U.S.C. § 1116(a);

(5)  For an order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, logo items, and advertisements in the possession of defendants, their agents, servants, and employees, and any person in active concert or participation with them, be delivered to JIB at Defendants' cost;

(6)  For an order that Defendants, jointly and severally, pay to JIB all gains, profits, advantages, and damages as a result of Defendants' wrongful conduct;

(7)  For an order that JIB recover three times Defendants' profits made as a result of Defendants' wrongful actions or three times JIB's damages, whichever is greater, pursuant to 15 U.S.C. § 1117;

(8)  For an order declaring this case an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and directing Defendants to reimburse JIB for its reasonable attorneys' fees;

(9)  For an order awarding JIB exemplary damages for Defendants' willful and intentional acts;

(10)  For an order awarding all costs and expenses, including attorneys' fees and costs, incurred by JIB in connection with this action;

(11)  For an order awarding prejudgment and post-judgment interest as allowed by law; and

(12)  For order granting such other and further relief as is just and equitable.

D.   For the Sixth Cause of Action Against Defendants:

(1)   For restitution against Defendants, jointly and severally, in the amount to be proven at trial;

(2)   For reasonable attorneys' fees and costs;

(3)   For injunctive relief as specified in this Complaint;

(4)   For costs of suit incurred herein;

(5)   For an order awarding prejudgment and post-judgment interest as allowed by law; and

(6)   For such other and further relief as this Court may deem proper.

E.   For the Seventh Cause of Action against Defendants:

(1)   For entry of a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and each of their respective officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them, and all entities controlled by them, including, Mehta Enterprises and Deepak Enterprises, from:

(a)   continuing to operate Jack in the Box® restaurants, including, but not limited to Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400;

(b)   representing themselves as Jack in the Box® restaurants without a license or authorization;

(c)   using the Marks, any trademark, service mark, logo, or trade name that is confusingly similar to the Jack in the Box® trademarks, using any variation of the phrase Jack in the Box® or a misspelling of the phrase Jack in the Box® in connection with the promotion, marketing, advertising, public relations and/or operation of a restaurant, or any such establishment using Jack in the Box® marketing strategy;

     (d)    using the System, the Confidential Information, the Jack in the Box® unique business format, methods, and system of operations, in connection with the promotion, marketing, advertising, public relations and/or operation of a restaurant, or any such establishment using Jack in the Box® marketing strategy;

     (e)    infringing the Marks or using any similar designation, alone or in combination with any other components;

     (f)    diluting, blurring, passing off, or falsely designating the origin of the Marks, the System, the Jack in the Box® unique business format, methods, and system of operations;

     (g)    passing off any products or services as those of JIB or its authorized franchisees;

     (h)    causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with JIB's franchisees, or with any of their products or services;

     (i)    using any of the Marks for goods or services, or on the Internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with JIB;

     (j)    doing any other act or thing likely to induce the belief that Defendants' businesses, services, or products are in any way connected with, sponsored, affiliated, licensed, or endorsed by JIB; and

     (k)    unfairly competing with JIB's franchisees, in any manner.

    (2)    Entry of a temporary restraining order, preliminary injunction and permanent injunction requiring that the money, profit or funds obtained from the operation of any of the sites be placed in trust or escrow pending further order of the Court or upon such terms as are just;

(3)    For an order directing Defendants to file with this Court and serve upon JIB within 30 days after service of any injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction in accordance with 15 U.S.C. § 1116(a);

(4)    For an order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, logo items, and advertisements in the possession of defendants, their agents, servants, and employees, and any person in active concert or participation with them, be delivered to JIB at Defendants' cost;

(5)    For such other and further relief as is just and equitable.

F.    For the Eighth Cause of Action:

(1)    For an appointment of a receiver to manage, receive, take possession of, and collect (a) the Collateral and all proceeds thereof; and (b) the Marks, the System, the Confidential Information, JIB's trade secrets, confidential methods, procedures and techniques associated with JIB's distinctive system related to Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400;

(2)    For an appointment of a receiver to uphold and carry into effect the terms of JIB's security interest in the Collateral and all proceeds thereof;

(3)    For an appointment of a receiver to operate, manage, and run Site Nos. 0413, 0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471, 3483, 3491, 4334, 4340, 4346 and 4400 as provided under the Franchise Agreements;

(4)    For an order granting the receiver all other powers and duties referred to in the Complaint and reasonably necessary to carry out his other duties and responsibilities, including, without limitation, authority, pursuant to orders

1    of this Court, to sell the assets relating to the operation of Site Nos. 0413,

2    0420, 0433, 0436, 0451, 0470, 0520, 0533, 0542, 0568, 0578, 3455, 3471,

3    3483, 3491, 4334, 4340, 4346 and 4400, and to sell said assets as a going

4    concern or otherwise; and

5    (5)    For an order granting other relief as is just and equitable.

6    Dated:  September 25, 2013          NOSSAMAN LLP

7

8    By: _____/s/ Robert S. McWhorter_____
                    Robert S. McWhorter

9
     Attorneys for Plaintiff
10   JACK IN THE BOX INC.,
     a Delaware corporation,
11   formerly known as Foodmaker, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28