NOSSAMAN LLP
Robert S. McWhorter (CA 226186)
*rmcwhorter@nossaman.com*
Stephen N. Roberts (CA 62538)
*sroberts@nossaman.com*
S. Ashar Ahmed (CA 256711)
*aahmed@nossaman.com*
621 Capitol Mall, 25th Floor
Sacramento, CA 95814
Telephone: 916.442.8888
Facsimile: 916.442.0382

Attorneys for Plaintiff
JACK IN THE BOX INC.,
a Delaware corporation, formerly known as Foodmaker, Inc.

Filed
OCT 11 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK IN THE BOX INC., a Delaware corporation, formerly known as Foodmaker, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>DEEPAK MEHTA, an individual; KIRAN MEHTA, an individual; MEHTA ENTERPRISES, INC., a suspended California corporation; DEEPAK ENTERPRISES INC., a California corporation,<br><br>Defendants. | Case No: 3:13-cv-04444-EJD<br><br>**[PROPOSED] ORDER TURNING OVER ASSETS TO PLAINTIFF, JACK IN THE BOX, INC.**<br><br>Date: October 10, 2013<br>Time: 1:30 p.m.<br>Courtroom: 4, 5th Floor<br>280 South 1st Street<br>San Jose, CA 95113<br>Before: The Hon. Edward J. Davila |

This matter came before this Court on Plaintiff's Jack in the Box, Inc.'s ("JIB") *Ex Parte* Application for Appointment of Receiver and other relief, and Order to Show Cause re Permanent Receiver and other relief, or Alternatively, Temporary Restraining Order (the "Receiver Motion"). This Court conducted a hearing on October 10, 2013. Megan A. Lewis appeared on behalf of Defendants. Robert S. McWhorter appeared on behalf of Plaintiff, Jack in the Box Inc. This Court reviewed the Complaint in this matter, as well as the papers filed in support of, and any opposition to, the Receiver Motion. Good cause exists for the relief requested herein.

**THIS COURT HEREBY FINDS THAT:**

A. JIB developed, and JIB is the sole and exclusive owner of, a unique and uniform system (the "System") relating to the establishment and operation of Jack in the Box® restaurants and featuring, among other things, quick-service restaurant service for the sale of food and beverage products.

B. To identify the source, origin, and sponsorship of its products and services, and to distinguish those products and services from those established, made, offered, and sold by others, JIB owns certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including but not limited to the names and marks Jack in the Box®, Jumbo Jack®, Sourdough Jack®, Breakfast Jack®, Clown Head Design®, and Jack Jr.® (the "Marks"). A list of the Marks is attached as **Exhibit A** to this Order.

C. JIB owns the Marks and registered the Marks on the Principal Register of the United States Patent Office. The registrations of the Marks continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

D. From 1992 to 2009, JIB, as franchisor, and Defendants, Deepak Mehta and Kiran Mehta (collectively, the Mehtas"), as franchisees, entered into various written Jack in the Box® Restaurant Franchise Agreements (collectively, the "Franchise Agreements"). The Franchise Agreements were assigned to Mehta Enterprises, Inc. or Deepak Enterprises Inc. with the

Mehtas, jointly and severally, still obligated for performance of all of the terms and conditions of the Franchise Agreements.

E. Pursuant to each of the Franchise Agreements, JIB supplied confidential information in connection with the development and operation of JIB's franchised businesses, including, but not limited to, JIB's products, recipes, product preparation procedures, customer service measures and techniques, franchise support procedures, supplier relationship and distribution system information, new product development information, growth plans or strategies, real estate development plans or strategies, restaurant design plans, proposed restaurant sites, equipment, computer systems, business and development plans and strategies, training programs, consumer research results, marketing and advertising strategies and materials, and other information designated as "confidential" by JIB (collectively the "Confidential Information").

F. From 1992 to 2009, JIB, as lessor, and the Mehtas, as tenants, entered into various written Lease Agreements (collectively, the "Lease Agreements"). The Lease Agreements were assigned to Mehta Enterprises, Inc., with the Mehtas, jointly and severally, still obligated for performance of all of the terms and conditions of the Lease Agreements. As used in this Order, "Defendants" shall collectively and individually refer to the Mehtas, Mehta Enterprises, Inc., and/or Deepak Enterprises Inc.

G. JIB terminated the Franchise Agreements and the Lease Agreements effective September 17, 2013 at 12:01 a.m.

H. Upon termination, Defendants' licenses to use the Marks and the System terminated.

**TURNOVER OF POSSESSION**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendants hereby turn over possession, custody, and control of the Property described below (the "Property") to Plaintiff, Jack in the Box, Inc.:

1.  **Description of the Property:** The term "Property" shall refer to all personal and real property located on the following premises:

| Site No. | Store Location |
|---|---|
| 0413 | 6510 Telegraph Avenue<br>Oakland, CA  94609 |
| 0420 | 2424 E. International Blvd.<br>Oakland, CA  94601 |
| 0433 | 4425 Telegraph Avenue<br>Oakland, CA  94609 |
| 0436 | 2689 Pinole Valley Road<br>Pinole, CA  94564 |
| 0451 | 1980 N. Texas Street<br>Fairfield, CA  94533 |
| 0470 | 400 Broadway Street<br>Vallejo, CA  94590 |
| 0520 | 1610 Lewis Brown Drive<br>Vallejo, CA  94589 |
| 0533 | 532 Hegenberger Road<br>Oakland, CA  94621 |
| 0542 | 14395 San Pablo Avenue<br>San Pablo, CA  94806 |
| 0568 | 1965 Texas Street<br>Fairfield, CA  94533 |
| 0578 | 2185 Main Street<br>Oakley, CA  94561 |
| 3455 | 107 Red Top Road<br>Fairfield, CA  94534 |
| 3471 | 3800 San Pablo Avenue, Bldg. A<br>Hercules, CA  94547 |
| 3483 | 499 Grizzly Island Road<br>Suisun City, CA  94585 |
| 3491 | 4801 Lone Tree Way<br>Antioch, CA  94531 |
| 4334 | 107 W. American Canyon Road<br>American Canyon, CA  94503 |
| 4340 | 2705 Hillcrest Avenue<br>Antioch, CA  94531 |
| 4346 | 4490 Central Way<br>Fairfield, CA  94534 |

The term "Property" shall also include the personal property at the following location:

| 4400 | 1051 Willow Pass Court<br>Concord, CA 94520 |
|---|---|

2. **Authority**: Without limiting the foregoing, immediately upon entry of this Order, JIB is vested with any and all authority reasonably necessary to operate, manage, control, or possess the Property, including, but not limitation, doing all things necessary to operate the restaurant business. JIB shall be entitled to immediate and exclusive possession, custody and control of the Property and all operations thereon, and all monies therefrom, equipment, fixtures, furnishings, improvements, entitlements, records, inventory, assets, royalties, revenues, rents, receivables, accounts, deposits, equities, profits, and any and all intellectual property related to the Property or business which shall include but not be limited to: web hosting accounts, all website files, databases, and domain registration accounts.

3. **Access to the Property:** JIB shall have the authority and right to engage a locksmith for the purpose of gaining entry to any Property. Additionally, JIB shall have exclusive access and control over any security system, in order to obtain any property or documents to which JIB is entitled pursuant to this Order. JIB may have locks or security codes changed, or have keys created that will work for the existing locks.

4. **Collection of Ongoing Income and Revenues:** JIB shall be authorized to collect all rents, profits, revenue and income, which are now or hereafter may be due from the operation of any business connected with the Property and improvements thereon.

5. **Manage and Operate:** JIB shall care for, preserve, maintain and operate the Property, and may incur any expenses necessary for this purpose. All such expenses shall be paid from funds from the operations of the Property. This authority shall include the ability to employ such agents, independent contractors, employees, brokers, and management companies to assist JIB in managing the Property. JIB shall undertake the risks and obligations ordinarily incurred by owners, managers, and operators of similar businesses and enterprises and shall pay for these services from the funds of the operation of the Property.

6. **Bank Accounts**: JIB shall open a separate bank accounts, money market accounts or other similar accounts with financial institutions to deposit funds received or generated from the operations of the Property. JIB shall be entitled to establish separate Gift Card accounts, VISA, MasterCard, or other applicable credit cards relating to the operation of the businesses at the various restaurant locations.

7. **Licenses and Permits:** JIB is vested with the authority to take possession of all licenses, permits or other government issued documents necessary for the continued operation of the Property. This shall include liquor licenses or permits even if the license/permit is not issued in the name of the Defendants. If the issuing agency requires that JIB apply for a new license, permit or other document, JIB shall be allowed to continue to operate under the current permit until the new one is issued to ensure no disruption of service occurs.

8. **Opening Report:** Within forty-five (45) days of the entry of this Order, the JIB shall prepare, file, and serve an Opening and Inventory Report in this Court.

9. **Monthly Reports:** So long as any part of the Property remains in the JIB's possession or until further order of the Court, JIB shall prepare monthly reports of the condition and operation of the Property within thirty (30) days of the closing of each accounting period or month ("Interim Reports"). JIB shall follow accounting standards typical for similar properties, and may enlist the aid of accountants for preparation of the Interim Report. JIB shall have no obligation to file the Interim Report with the Court, but may file such reports if JIB believes material information contained the report should be brought to the Courts attention. Additionally, JIB shall have no obligation to serve the parties copies of the Interim Reports, but may make such reports available to the parties in electronic format.

10. **Police Assistance:** JIB shall be entitled to the assistance of law enforcement officials when taking possession, or at any other time, if in the opinion of JIB, such assistance is necessary to preserve the peace and protect the Property, without further order from this Court.

11. **Use of Funds:** JIB may pay bills that are reasonable and necessary for the operation or the protection of Property for the period after the entry of this Order and until further order of the Court, including the normal operating costs and expenses of business relating to the

Property, utilities, insurance premiums, general and special taxes or assessments levied on the Property and improvements thereon. JIB may pay, at its discretion, any remaining amounts to reduce the amounts due, owing and unpaid by the Defendants to JIB. All monies coming into the JIB's possession shall only be expended for the purposes herein authorized, and the balance of funds shall be held by JIB pending further order of this Court.

12. **Pre-Order Obligations:** Any amounts owed for the period prior to the entry of this Order shall only be paid by JIB if in its sole and exclusive judgment such payments are prudent and reasonable. JIB shall be authorized to use MBM as a vendor.

13. **Right to Borrow Funds:** In the event that income from the operation of the Property is insufficient to meet normal operating expenses and costs, JIB is authorized to fund operations under such terms as agreed upon by the parties.

14. **Utilities:** Any utility company providing services to the Property, including gas, electricity, water, sewer, trash collection, telephone, communications or similar services, shall be prohibited from discontinuing service to the Property for any non-payment by Defendants prior to entry of this Order based upon unpaid bills incurred by Defendants. Further, such utilities shall transfer any deposits held by the utility company to the exclusive control of JIB and be prohibited from demanding that JIB deposit additional funds in advance to maintain or secure such services. JIB shall to change the mailing address of the billing statements for any utilities. Utility companies are prohibited from discontinuing service while the accounts are being transferred to JIB.

15. **Mail**: JIB may issue demand upon the U. S. Postal service to grant exclusive possession and control of mail, including postal boxes as may have been used by the Defendants, and may direct that certain mail related to the Property and its business be re-directed to JIB. JIB is authorized to open any mail in the name of the Defendants that are delivered to the Property.

16. **Employees**: JIB is authorized to retain or hire existing employees of the Defendants to continue any business operations. The parties agree that JIB shall have not any obligation to employ or hire any of the Defendants, their family members, and/or Rita Dass.

    **17. WARN:** To the extent that Worker's Adjustment and Retraining Notification Act (the "WARN Act") is applicable, Defendants shall be solely responsible for any and all liabilities, claims, costs, expenses, interests, fines, penalties, actions, causes of action and the like.

**18. Sale of the Property:** JIB is authorized to list and market the Property for sale to third party purchasers.

**19. Insurance:** JIB shall determine upon taking possession of the Property whether, in JIB's judgment, there is sufficient insurance coverage.

**20. Taxes:** JIB shall not be obligated to file any federal or state income tax, returns, schedules or other forms, which continue to be an obligation of the Defendants.

**21. Delivery of Revenues:** For any money generated on October 12 and 13, 2013, JIB shall deliver said money to Defendants to be deposited it their bank account to employees payroll. Any funds generated in excess of the payroll amount shall be retained by JIB.

**22. Defendants' Requirements:** Within five (5) calendar days of the entry of this Order, Defendants or their agents shall provide or make available, in a manner reasonable acceptable to JIB , the following, to the extent such items exist:

a. Copies of any and all service contracts pertaining to the Property;

c. Copies of any and all leases, lease abstracts, purchase agreements and the like pertaining to the Property;

d. All open invoices for services or goods relating to the Property;

e. A complete set of keys (including ALL masters), all security and access codes and cards to the Property, and a schedule (including full contact information) identifying each person or entity who currently has one or more keys or access cards to the Property or who has knowledge of any access codes thereto;

g. In addition to the materials identified in subsection (e) above, a copy of the following documents; any and all records and information Defendant may have concerning the Property, including without limitation all written and

electronic books, records, correspondence, and other information related to (i) any agreements to which the Property is or may be subject; (ii) any amounts received from the tenants of the Property, from the time Defendants took ownership of the Property to date of entry of the this Order; (iii) all liens or other encumbrances on the Property; (iv) property taxes, assessments and related appeals, (v) insurance of all types for Defendants and tenants related to the Property; (vi) all maintenance and service contracts; (vii) all invoices for services at the Property; (viii) all tenant files, including leases, lease abstracts, purchase agreements and sample leases; (ix) current and accurate copy of all electronic information for items related to accounting including tenant escalations/reconciliations from the time commencing from the date Defendants took ownership of the Property to the date of the entry of this Order; (x) a schedule of all capital expenditures put into the Property since Defendants assumed ownership of the Property and any items of deferred maintenance and capital currently required; (xi) a full and complete rent roll including but not limited schedules/information related to tenant security deposits, encumbrances, options, escalations, rents and terms, (xii) all current information (in hard copy and electronic format) including but not limited to brochures, photographs (including aerial), maps, signage; and (xiv) all other aspects of the Property records that are or may be necessary or pertinent to JIB's management, maintenance, operation and/or sale of the Property.

h. Any and all insurance loss histories/or claims on the Property;

i. Any and all other documents relating to the Property as requested by JIB; and

j. All Property and all other documents of value associated with use, operation and maintenance of the Property.

    k. If such items do not exist, Defendants shall notify JIB and the Court in a notarized affidavit.

**INJUNCTIVE RELIEF**

**23. IT IS HEREBY FURTHER ORDERED THAT**, except by leave of this Court, all lessors, lessees, customers, principals, investors, suppliers, and or creditors seeking to enforce any claim, right, or interest against Defendants relating to the Property shall be barred by this Order from using any "self-help" or doing anything whatsoever to interfere in any way with JIB in the conduct of the business; except, however, JIB may commence, proceed, or continue any unlawful detainer proceeding in State Court relating to locations identical in section 1 of this order.

**24. IT IS HEREBY FURTHER ORDERED THAT**, pending further Order of this Court, the Defendants, and each of them, and their agents, partners, property managers and employees, and all other persons acting in concert with them who have actual or constructive knowledge of this Order, and their agents and employees, shall not:

**a. Commit Waste:** Defendants shall not commit or permit any waste on the Property or any part thereof, or suffer, commit or permit any act on the Property or any part thereof in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Property or the fixtures presently on the Property or any part thereof;

**b. Collect Rents:** Defendants shall not demand, collect, receive, discount, or in any other way divert or use any of the rents from the Property.

**c. Interfere with JIB:** Defendants shall not directly or indirectly interfere in any manner with the discharge of JIB's duties under this Order or its possession of and operation or management of the Property;

**d. Transfer or Encumber the Property:** Defendants shall not expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security

interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any part of the Property, including, but not limited to, the rents, without prior court order; and

**25.** As to the injunctive relief granted herein, this Order shall be binding on the parties to this action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of this injunction.

**26.** **IT IS HEREBY FURTHER ORDERED** that all third parties (including but not limited to financial institutions) in possession of assets subject to this Order are hereby ordered to turn over such assets to JIB within five (5) business days of receipt of a copy of this Order.

**IT IS HEREBY FURTHER ORDERED** this order and the relief provided herein shall not waive, alter, modify, change, release, or in any way, affect JIB's termination of the Franchise Agreements and the Lease Agreements nor shall such Franchise Agreement and Lease Agreements be reinstated or revived hereby. The relief provided herein serves an interim remedy pending further order of this Court pursuant to this Court's authority under federal law.

DATED: 10/11/13

U.S. DISTRICT COURT JUDGE