United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACK IN THE BOX, INC., | CASE NO. 5:13-cv-04444 EJD |
| Plaintiff(s), | **ORDER GRANTING PLAINTIFF'S MOTION TO AMEND TURNOVER ORDER AND APPROVE PRIVATE FORECLOSURE SALE** |
| v. | |
| DEEPAK MEHTA, et. al., | |
| Defendant(s). | [Docket Item No(s). 29, 66, 98, 99] |

Plaintiff Jack in the Box, Inc. ("JIB"), a corporation engaged in the "highly-competitive quick-service restaurant business," filed a Complaint on September 25, 2013, asserting causes of action for breach of contract, claim and delivery, violations of the Lanham Act, and violation of California's Unfair Competition Law against Defendants Deepak Mehta, Kiran Mehta, Mehta Enterprises, Inc. and Deepak Enterprises, Inc. (collectively, "Defendants"). See Docket Item No. 1. In that Complaint, JIB alleges that Defendants, who are former operators of certain Jack in the Box restaurants in Northern California, breached written franchise and lease agreements by failing to make timely payments.

Presently before the court is JIB's motion to amend one the court's prior orders and to approve a private foreclosure sale between it and proposed intervenor GE Capital Bank ("GECB"). See Docket Item No. 99. Defendants have filed written opposition to the motion and the parties presented oral argument at the hearing on May 16, 2014. Having considered the relevant pleadings

1
CASE NO. 5:13-cv-04444 EJD
ORDER GRANTING PLAINTIFF'S MOTION TO AMEND TURNOVER ORDER AND APPROVE PRIVATE FORECLOSURE SALE

and argument, and as stated at the hearing, Plaintiff's motion will be granted for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Relevant to this motion are Defendants' financing agreements with GECB. On February 10, 2012, Defendants executed a promissory note in favor of GECB for $9 million amortized over 120 months which obligated Defendants to make monthly payments to GECB from March, 2012, to March, 2019. To secure the note, Defendants executed a Security Agreement which granted GECB a security interest in certain collateral, consisting mainly of interior fixtures and furnishings used to operate Defendants' Jack in the Box restaurants. GECB perfected its security interest in the collateral by filing a UCC-1 Financing Statement with the California Secretary of State on January 26, 2012.

As part of the financing arrangement, Defendants, JIB and GECB entered into a Consent, Waiver, and an Amendment to Loan Documents, within which JIB consented to GECB obtaining a security interest in the collateral. JIB also agreed that its security interest would be subordinated to that of GECB.

JIB terminated its franchise and lease agreements with Defendants on September 17, 2013. As a result of this occurrence and others, GECB asserts that Defendants have defaulted under the financing agreements by failing to comply with all obligations due under their franchising agreements with JIB, failing to complete and deliver financial reporting, failing to conduct business operations so as to satisfy specified financial covenants and ratios, and causing to occur certain events affecting the Defendants' financial condition or their ability to perform under the agreements with GECB. Defendants do not disagree with GECB's assertions, at least for the purposes of this motion.

After JIB filed the complaint underlying this action, GECB moved to intervene on the eve of a temporary restraining order hearing. See Docket Item No. 29. With GECB's motion pending, the court entered an order on October 11, 2013, now known as the "Turnover Order," which permitted JIB to take over operations of Defendants' restaurants in lieu of a receivership. See Docket Item No.

34. The Turnover Order also enjoined "all lessors, lessees, customers, principals, investors, suppliers, and/or creditors seeking to enforce any claim, right, or interest against Defendants relating to the Property . . . from using any 'self help' or doing anything whatsoever to interfere in any way with JIB in the conduct of the business." Id. at ¶ 23. GECB moved for reconsideration of that order after its entry. See Docket Item No. 66.

Though filed some time ago, GECB's intervention and reconsideration motions remain outstanding. However, JIB now seeks approval of a private foreclosure sale between itself and GECB which, if granted, will render GECB's further participation unnecessary and its motions moot.

## II.  LEGAL STANDARD

For this matter, the court must consider the law which applies to those remedies available to a secured party. After a default by the obligor, "a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." Cal. Com. Code § 9610. "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be *commercially reasonable*." Id. (emphasis added). As defined by statute, a disposition of collateral is made in a commercially reasonable manner if it satisfies any of these conditions: "(1) [i]t is made in the usual manner on any recognized market;" "(2) [i]t is made at the price current in any recognized market at the time of the disposition;" or "(3) [i]t is made otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." Cal. Com. Code § 9627(b).

"However, the methods of commercially reasonable dispositions listed under § 9627(b) are not required or exclusive, and other types of dispositions may" satisfy the standard. Bank of the Sierra v. Kallis, No. CIV F 05-1574 AWI SMS, 2006 WL 3513568, 2006 U.S. Dist. LEXIS 88234, at *26 (E.D. Cal. Dec. 6, 2006). "The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party, from

establishing [commercial reasonableness]." Cal. Comm. Code § 9627(a). Ultimately, "[w]hether a disposition is commercially reasonable is generally a question of fact and depends on all of the circumstances existing at the time of the sale." Bank of the Sierra, 2006 U.S. Dist. LEXIS 88234, at *26 (citing Ford & Vlahos v. ITT Commercial Fin. Corp., 8 Cal. 4th 1220 (1994); Aspen Enters., Inc. v. Bodge, 37 Cal. App. 4th 1811, 1827 (1995); Crocker Nat'l Bank v. Emerald, 221 Cal. App. 3d 852 (1990)).

The court must also be mindful of its ability to amend pretrial orders. The "general rule . . . is as follows: As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of Los Angeles v. Santa Monica BayKeeper, 254 F.3d 882, 885 (9th Cir. 2001) (quoting Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981)). This inherent ability is reinforced in the Federal Rules of Civil Procedure: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

### III. DISCUSSION

As suggested, JIB seeks approval of an Asset Purchase Agreement ("APA") between itself and GECB which would result in a private foreclosure sale between the two entities. Under the terms of the APA, JIB agrees to purchase from GECB all of the collateral (which, again, are mainly interior equipment and fixtures related to operating the Jack in the Box restaurants).[1] JIB also seeks modification of the Turnover Order to allow for the foreclosure sale.

JIB argues this arrangement is "commercially reasonable" for a number of reasons. First, JIB points out that the APA was negotiated at arms-length between two sophisticated parties, one of whom is a ready, willing and able seller and the other a ready, willing and able buyer. In that

---

[1] JIB's motion to file the APA under seal (Docket Item No. 98) is GRANTED. Accordingly, the detailed terms of the APA, including the sales price, are not revealed in this order.

United States District Court
For the Northern District of California

regard, JIB relates that it needs the collateral (or some similar replacement) in order to maintain its ongoing operation of the restaurants and is motivated to obtain it at the lowest possible price, while GECB seeks to recover on Defendants' debt and wishes to obtain the highest possible sales price.

Second, JIB believes the sale price is reasonable because this particular collateral has the highest value if purchased "in place" by the operator of a going concern and surmises that a much lower price would result through either a public foreclosure sale or a private sale with a vendor other than JIB. In addition, JIB believes the final sales price properly accounts for depreciation of the collateral's value over time.

Third, JIB notes that the APA includes terms consistent with the notice requirements of the Commercial Code and provides for the transfer of Defendants' ownership rights to JIB.[2]

Defendants oppose the approval. They argue that JIB does not have standing to negotiate a sale because Defendants still retain title to the collateral and that this motion violates Defendants' due process rights. Defendants also contend the foreclosure sale is premature before trial in this action and that this motion is a disguised request for reconsideration of the Turnover Order.

While the court has carefully considered Defendants' objections, it nonetheless finds them misplaced. Taking the final proposition first, this is not a disguised reconsideration motion; it is instead a request to modify an order to allow for a contractually-designated proceeding that was not yet in existence at the time the Turnover Order was entered. The court can approve this sale now and has the inherent power to amend its order without reconsidering anything.

As to the first and second propositions concerning standing and due process, Defendants fail to account for the fact that they defaulted on the financing agreement with GECB, and that GECB may now exercise its rights pursuant to both the financing agreement and the salient portions of the Commercial Code. As noted above, § 9610 allows a secured party to "sell, lease, license, or otherwise dispose of any or all of the collateral." Moreover, § 9617 provides that Defendants' title

---

[2] As to notice, JIB is referring to Commercial Code §§ 9611 and 9613, which require that a certain form of notice be provided to the debtor. As to title, JIB refers to Commercial Code § 9617 which states that the debtor's title passes to the transferee upon the secured party's disposition of the collateral.

5
CASE NO. 5:13-cv-04444 EJD
ORDER GRANTING PLAINTIFF'S MOTION TO AMEND TURNOVER ORDER AND APPROVE PRIVATE FORECLOSURE SALE

1  in the collateral will pass to JIB as a result of the sale so long as it is "commercially reasonable"
2  under §§ 9610 and 9627.  In essence, Defendants' title appears to be a technicality at this point
3  because the Commercial Code makes clear they have lost control over the collateral's ultimate
4  disposition.

5      Furthermore, any trial in this action is of no moment to the limited issue presented here.
6  Since the financing agreement between Defendants and GECB is not directly at issue in this case,
7  the trial will have no effect on Defendants' breach of that agreement or their relationship with
8  GECB.  These circumstances would continue to exist even if Defendants were to prevail against JIB.
9  Defendants' speculation of a higher sales price were they permitted to negotiate with GECB is just
10 that - speculation - and not a valid reason to reject this proposed sale in any event.  See Cal. Com.
11 Code § 9627(a).

12     In the end, the court finds the APA embodies a "commercially reasonable" sale and that its
13 terms are consistent with the relevant provisions of Commercial Code §§ 9610 and 9627.  The court
14 also finds its appropriate to modify the Turnover Order to allow for the sale.

### IV.   ORDER

16     Based on the foregoing, JIB's motion (Docket Item No. 99) is GRANTED.

17     The Turnover Order is modified such that GECB is authorized to proceed with the private
18 foreclosure sale as contemplated in the APA, in full resolution of GECB's intervention motion
19 (Docket Item No. 29) and reconsideration motion (Docket Item No. 99), both of which are DENIED
20 AS MOOT.

21     Upon closing of the sale authorized by this order, all of Mehta Enterprises, Inc.'s right, title,
22 and interest in the collateral shall be conveyed to JIB to the full extent provided under California
23 Commercial Code § 9617 and the APA.

24 **IT IS SO ORDERED.**

25 Dated:  May 19, 2014

                                        EDWARD J. DAVILA
                                        United States District Judge

CASE NO. 5:13-cv-04444 EJD
ORDER GRANTING PLAINTIFF'S MOTION TO AMEND TURNOVER ORDER AND APPROVE PRIVATE FORECLOSURE SALE

United States District Court
For the Northern District of California