IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACK IN THE BOX, INC., | CASE NO. 5:13-cv-04444 EJD |
| Plaintiff(s), | **ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO AMEND; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR APPROVAL AND ORDER DIRECTING PAYMENT** |
| v. | |
| DEEPAK MEHTA, et. al., | |
| Defendant(s). | |
| | [Docket Item No(s). 72, 94, 124] |

## I. INTRODUCTION

This action does not require a detailed factual recitation; suffice it to say it is a familiar one to both the court and the litigants. The involved parties are Plaintiff Jack in the Box, Inc. ("JIB"), who is widely recognized as a corporation engaged in the "highly-competitive quick-service restaurant business." JIB filed a Complaint on September 25, 2013, asserting causes of action for breach of contract, claim and delivery, violations of the Lanham Act, and violation of California's Unfair Competition Law against Defendants Deepak Mehta, Kiran Mehta, Mehta Enterprises, Inc. and Deepak Enterprises, Inc. (collectively, "Defendants"). See Docket Item No. 1. In that Complaint, JIB alleged that Defendants, who are former operators of nineteen Jack in the Box restaurants in Northern California, breached written franchise and lease agreements by failing to make timely payments. The restaurants have been operated by JIB since October, 2013, pursuant to an order entered in lieu of a receivership (the "Turnover Order"). See Docket Item No. 34.

1  Federal jurisdiction arises pursuant to 28 U.S.C. § 1331.  Presently before the court are three
2  matters: (1) Defendants' Motion to for Leave to Amend the Answer and Assert Counterclaims, (2)
3  JIB's Motion for Partial Summary Judgment, and (3) Defendants' Motion seeking an order
4  approving a negotiated settlement with a third party vendor and requiring JIB to pay the settlement
5  amount.  See Docket Item Nos. 72, 94, 124.  After careful consideration and for the reasons
6  explained below, the first motion will be granted but the second and third motions will be denied.

## II.   MOTION TO AMEND ANSWER AND ASSERT COUNTERCLAIMS

Defendants filed an Answer to the Complaint on November 12, 2013.  See Docket Item No. 39.  Through this motion, they seek leave to make certain amendments to that Answer and to assert counterclaims against JIB for breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel.  The court begins with this motion since, as will be revealed, its resolution is dispositive of JIB's summary judgment motion.

### A.   Legal Standard

Most motions to amend the pleadings are initially subject to the liberal standard for amendments contained in Federal Rule of Civil Procedure 15.  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).  But here, the court-imposed deadline for amendments to the pleadings expired before this motion was filed.[1]  As such, Plaintiff's motion is preliminarily governed by Rule 16 rather than Rule 15.  Johnson v. Mammoth Recreations Inc., 975 F.2d 604, 607-608 (1992).

Under Rule 16, Plaintiff must initially demonstrate sufficient "good cause" to modify the scheduling order so as to allow for the late amendments.  See id.; see also Fed. R. Civ. Proc. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  If, and only if, the requisite good cause is shown, the court then turns to an examination of the relevant

---

[1] The court issued a Case Management Order on January 15, 2014, which set the deadline for amendments to the pleadings at sixty days from the date of entry of the order.  See Docket Item No. 54.  Sixty days from January 15th was approximately March 17, 2014.  This motion was filed on April 2, 2014.

2
CASE NO. 5:13-cv-04444 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO AMEND; DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT' MOTION FOR APPROVAL AND ORDER
DIRECTING PAYMENT

factors under Rule 15. Hood v. Hartford Life & Accident Ins. Co., 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008); Johnson, 975 F.2d at 609 ("If that party was not diligent, the inquiry should end".).

B. Discussion

1. The Rule 16 Analysis

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." Id. (internal quotations omitted). "[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999)

In seeking an extension - or rather an exception - to the amendment deadline imposed in the Case Management Order, Defendants explain why they waited until after the deadline to bring this motion. Defendants first point out the parties were engaged in settlement discussions with JIB and their largest creditor, GE Capital Bank ("GECB"),[2] from this action's inception. They were optimistic those discussions would prove successful and did not want to change the dynamic by amending allegations and inserting new counterclaims prior to the completion of the mediation process. In Defendants' opinion, doing so would have extinguished any chance of settlement. Indeed, Defendants' counsel stated at the hearing it was difficult enough to obtain JIB's consent to a litigation alternative under the procedural circumstances presented at the time; modifying those circumstances would have only accentuated the challenge.

In that same vein, Defendants also cite their impression of the court's comments during a

---

[2] The court approved a private foreclosure sale between JIB and GECB on May 19, 2014. Assuming that sale has occurred then GECB's claims have been resolved. See Docket Item No. 116.

3
CASE NO. 5:13-cv-04444 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO AMEND; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT' MOTION FOR APPROVAL AND ORDER DIRECTING PAYMENT

previous motion hearing. On February 14, 2014, the court recommended the pursuit of alternative dispute resolution and stayed briefing on JIB's already-pending summary judgment motion in order to accommodate that effort. Defendants apparently took those comments to heart and focused exclusively on the mediation process rather than on investigation, discovery and case development. As Defendants' counsel put it during oral argument on this motion: "the court encouraged the parties to not dig their heels further into litigation and really focus on efforts of mediating."

For its part, JIB unsurprisingly disagrees that Defendants' explanation constitutes diligence. Focusing on the exact nature of the proposed amendments and counterclaims, JIB argues that all of the factual information Defendants now seek to allege was known to them even before this action was commenced. That being the case, JIB believes Defendants, had they truly sought to be diligent, would have alleged these facts and asserted these claims originally instead of waiting until after JIB had moved for summary judgment. JIB therefore characterizes the proposed amendments as "a bad faith attempt to now retract [] unqualified admissions."

JIB's position does have some merit. Facially speaking, the proposed amendments and counterclaims consist of information that should have been within Defendants' knowledge when they filed their first pleading. The amendments to the Answer are either qualifications to or reversals of certain declarations and admissions previously made. For example, Defendants' admitted in their original Answer that there were defaults of the franchise agreements, as alleged by JIB. See Answer, Docket Item No. 39, at ¶ 1. They also admitted certain specific defaults, including failure to pay rent, failure to pay royalty and marketing fees, failure to pay other ancillary fees, failure to pay taxes, and failure to make payments on a separate promissory note to JIB. Id. at ¶ 58. But in the Amended Answer, Defendants now propose to allege that JIB prevented them from curing these same defaults. In addition, Defendants claim in the Amended Answer that they no longer have sufficient information to admit some previously-admitted events of default.

Something similar can be said about the counterclaims. All of Defendants' affirmative allegations against JIB stem from the post-default period in the summer and fall of 2013 when JIB and Defendants were trying to resolve Defendants' default under the franchise agreements.

According to Defendants, they had arranged to refinance the GECB loan with Bank of America and had entered into an agreement with another JIB-approved franchisee to purchase some of their restaurants. Both deals allegedly fell through when JIB, unexpectedly, raised the amount owed by Defendants just days before escrow was to close on the franchise transfers. Defendants assert that this conduct constitutes JIB's breach of the franchise agreements' cure provision.

It is true that "[l]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). But as this court has previously recognized, prior knowledge of certain factual information is not entirely dispositive of the Rule 16 inquiry. Weaver v. Tampa Inv. Group, LLC, No. 5:12-cv-01117 EJD, 2012 U.S. Dist. LEXIS 180547, at *6, 2012 WL 6652495 (N.D. Cal. Dec. 20, 2012). "Although the court may deny the motion to amend where the moving party knows or should have known of the facts but failed to include them in the original complaint, this is but one indicator of diligence." Nucal Foods, Inc. v. Quality Egg LLC, No. CIV S-10-3105 KJM-CKD, 2012 U.S. Dist. LEXIS 10067, at *12-13, 2012 WL 260078 (E.D. Cal. Jan. 27, 2012) (internal citation omitted).[3] And in this case, under these specific circumstances, the fact that Defendants may have delayed raising alleged facts and claims does not win the day. This court - being intimately familiar with this litigation - finds that a more pragmatic approach to this motion is appropriate because, as described above, there are other, more weighty indicators of Defendants' diligence.

Here, it understandable why Defendants would want to get an Answer on file and then focus their initial efforts on achieving an early, informal resolution. That type of strategy would not only save time and further expense, it was also entirely consistent with the nature of their relationship with JIB, at least as it existed prior to the initiation of this lawsuit. All indications are that the parties' relationship was a positive one, and appeared to have been built upon earned respect and

---

[3] The fact that this case involves amendments to the Answer rather than the Complaint is of no moment; the same principles apply no matter the pleading. See, e.g., C.F. v. Capistrano Unified Sch. Dist., 654 F.3d 975, 984 (9th Cir. 2011).

United States District Court
For the Northern District of California

some degree of accommodation. If the story behind the counterclaims is any guide,[4] what Defendants did is carry over into this lawsuit those same positive feelings, along with the parties' previously-shared desire to reach some arrangement short of a civil judgment. Adding to that was court's comments on February 14th, which reflected its perception that something could be achieved outside of the courtroom, and more than likely than not solidified the path Defendants had already chosen. All of this plausibly explains why Defendants filed this motion shortly after the mediation process failed, but not before. It was finally clear to them by then that the game had changed.

It is certainly true that Defendants could have sought this relief sooner, and the court does not advocate that what was done here is something acceptable for every case. But Defendants did act reasonably under the circumstances. For that reason, the court does not impart upon Defendants the same sense of bad faith or dilatory motive that JIB does. Defendants were diligent, albeit through the pursuit of finality by mediation. Accordingly, the court finds that Plaintiffs have satisfied their burden to demonstrate good cause under Rule 16.

### 2.     The Rule 15 Analysis

The court now turns to whether the proposed amendments are consistent with Rule 15.

A request for leave to amend may be denied under Rule 15 where the amendment would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. Foman v. Davis, 371 U.S. 178, 182 (1962); Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994). Not all of the Rule 15 considerations are created equal; "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

JIB's articulation of bad faith and undue prejudice focuses on the timing of this motion in relation to its summary judgment motion. In that regard, JIB argues it will be "severely prejudiced" by the proposed amendments because they will undermine its Motion for Partial Summary Judgment. JIB believes the possibility of such a result demonstrates Defendants' bad faith. True,

---

[4] Of course, the court takes the counterclaims' allegations at face value solely for the purposes of this motion. Whether or not the allegations are true is a determination for another day.

1   allowing for the amendments now will have the effect of invalidating JIB's motion.  But that effect
2   is not unduly prejudicial because JIB does not have a right to summary judgment at this or any other
3   time.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Irvin v. Griffin
4   Corp., 808 F.2d 802, 807 (11th Cir. 1987).  Nor does the court believe this motion is brought for the
5   sole purpose of avoiding summary judgment.  In any event, JIB must have known it was possible,
6   when it filed a dispositive motion, during the discovery period and nine months before the motion
7   deadline, that its motion may never be heard because the case was still evolving.[5]

8   This leaves undue delay and futility.  Neither of these considerations assist JIB here.  On the
9   issue of delay, the most recent revision to the scheduling deadlines means this action is still in the
10  discovery phase.  Trial dates have not yet been set and the schedule can still be adjusted further if
11  additional time for discovery is necessary.  As to futility, JIB's argument on that issue - again based
12  on the amendments' effect on its early summary judgment motion - is uncompelling.

13  None of the Rule 15 factors weigh against allowing Defendants leave to amend their Answer
14  and assert counterclaims.  Thus, this issue is resolved in their favor, and Defendants' motion will be
15  granted according to the order below.

16  **II.   MOTION FOR PARTIAL SUMMARY JUDGMENT**

17  JIB moves for partial summary judgment on its first cause of action for breach of contract
18  and on its third and fourth causes of action for trademark infringement and false use under the
19  Lanham Act.  The motion is plead such that the latter two causes of action flow from the breach of

---

[5] JIB's citation to the doctrine of judicial admission is misplaced.  Huey v. Honeywell, Inc., 82 F.3d 327, 333 (9th Cir. 1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission . . . .").  The same is true of judicial estoppel. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001) (holding that application of judicial estoppel is limited to cases "where the court relied on, or 'accepted,' the party's previous inconsistent position.").  Even if the state court "accepted" any inconsistent position by Defendants, the stipulated unlawful detainer judgments nonetheless contain a clear provision precluding any effect on this litigation.  See Decl. of Robert S. McWhorter, Docket Item No. 101, at Ex. A.

In addition, the court did not rely on the particular position of any party when issuing the Turnover Order.  Indeed, as the parties well know, that order embodies a compromised, temporary solution reached after the downsides of either a receivership or the complete shut-down of the restaurants were considered.

7
CASE NO. 5:13-cv-04444 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO AMEND; DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT' MOTION FOR APPROVAL AND ORDER
DIRECTING PAYMENT

contract claim; if JIB can show that Defendants breached the contract and that JIB validly terminated the franchise agreements, it follows that Defendants will have also violated the Lanham Act.

Since the court will allow Defendants to amend their Answer, JIB's motion brought in reliance on Defendants' prior default admissions is no longer viable. JIB cannot meet its burden to prove breach of contract based on the present showing. Accordingly, the Motion for Partial Summary Judgment will be denied, but JIB may, of course, move again for summary judgment when appropriate based on additional evidence.

### III.  MOTION TO APPROVE SETTLEMENT AND ORDER PAYMENT

Defendants seek an order which (1) finds that a requested payment of $350,000 to third-party vendor McLane Foodservices, Inc. ("McLane") is reasonable under the Turnover Order, and (2) directs JIB to pay McLane that amount. JIB opposes this motion, arguing that this issue has been decided. The court agrees with JIB.

McLane previously moved to intervene in this action. In analyzing whether such intervention was appropriate, the court found McLane's interest as one of Defendants' unsecured creditors was "too attenuated to justify intervention" because its "interest in collecting on a debt simply related to the operation of the restaurants is not raised by JIB's claims." See Docket Item No. 97. The court also rejected the argument that the Turnover Order put at issue in this case any debt owed to McLane because "the Turnover Order vests JIB with discretion to pay Defendants' creditors; it does not require payments or do anything to protect the interests of creditors." Id. "Moreover, inclusion of that provision in the Turnover Over does not mean that claims of unsecured creditors are somehow at issue in this case." Id. Indeed, as the court identified, McLane had already found another, more appropriate avenue to protect its interest.

Defendants have not demonstrated that anything has changed such that the court's prior reasoning is any less applicable to this motion. The simple fact that Defendants have reached a proposed settlement with McLane, while admirable, is not enough. However Defendants wish to package it, the instant motion seeks the same relief McLane would have sought had it been

8
CASE NO. 5:13-cv-04444 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO AMEND; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT' MOTION FOR APPROVAL AND ORDER DIRECTING PAYMENT

permitted to intervene. That relief is no more relevant to this action now than it was before. For that reason, the motion will be denied.

### IV.  ORDER

Based on the foregoing:

1. Defendants' Motion for Leave to Amend the Answer and to Assert Counterclaims (Docket Item No. 94) is GRANTED. Defendants shall file the Amended Answer and Counterclaims as separate docket items on ECF/PACER forthwith.
2. JIB's Motion for Partial Summary Judgment (Docket Item No. 72) is DENIED.
3. Defendant's Motion regarding a payment to McLane (Docket Item No. 124) is DENIED.

**IT IS SO ORDERED.**

Dated: August 21, 2014

EDWARD J. DAVILA
United States District Judge